## FAIRMONT CREAMERY COMPANY *v.* MINNESOTA.

### MOTION TO RETAX COSTS.

No. 725, October Term, 1926. Submitted October 17, 1927.—Decided November 21, 1927.

1. A clause imposing costs inserted in a final judgment of this Court by the clerk and approved by the Justice who wrote the opinion disposing of the case, is the act of the Court, not merely of the clerk, and is beyond the power of the Court to recall after expiration of the term. So *held* where no petition for rehearing was made within the 40 days allowed by Rule 30. P. 72.

2. As a party to litigation in this Court, a State is not immune to costs in virtue of its sovereignty. P. 73.

3. A rule as to the awarding and division of costs is within the inherent authority of this Court as to all litigants before it, except the United States. P. 74.

4. Costs may be awarded against States, as litigants before this Court, in criminal as well as civil cases. Rule 29, § 3; cf. Jud. Code § 254. *United States* v. *Gaines,* 131 U. S. Appendix clxix, distinguished. ·P. 75.

THIS was a motion by the State to retax, i. e., to eliminate, the costs allowed against it in this Court. The allowance was included in a judgment reversing a conviction of the Creamery Company in a state prosecution based on, a statute which the Court found unconstitutional. 274 U. S. 1.

*Messrs. Clifford L. Hilton,* Attorney General of Minnesota, and *Charles E. Phillips,* Assistant Attorney General, for defendant in error, in support of the motion.

*Messrs. Eugene J. Hainer, Leonard A. Flansburg, George A. Lee,* and *M. S. Hartman* for plaintiff in error, in opposition thereto.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a motion by the State of Minnesota to retax the costs in this Court, which, by the judgment herein have been awarded against it. The Fairmont Creamery Company was charged with an offense under a statute of Minnesota before a justice of the peace, and was convicted. The judgment was affirmed on appeal to the District Court for the county, and this was in turn affirmed by the Supreme Court of the State. 168 Minn. 378, 381. The Creamery Company then sued out a writ of error from this Court, which on April 11, 1927, reversed the judgment, because of the unconstitutionality of the statute under which the conviction had been had. 274 U. S. 1. The following was the judgment:

"    .   .   . On consideration whereof, It is now here ordered and adjudged by this Court that the judgment of

the said Supreme Court, in this cause, be, and the same is hereby, reversed with costs; and that this cause be, and the same is hereby, remanded to the said Supreme Court for further proceedings not inconsistent with the opinion of this Court."

No application for rehearing was made during the term which ended on June 6, 1927. The mandate was issued, and filed with the Supreme Court of Minnesota in July, 1927. The motion of defendant in error now before us was filed September 30, 1927.

Our Rule 30, effective July 1, 1925, provides that a petition for rehearing may be filed with the Clerk, in term time or in vacation, within forty days after judgment is entered, but not later. It is contended by the plaintiff in error that the motion to retax costs would amend the judgment after the term and must be denied, for the reason that this Court has no further jurisdiction in the matter. *Peck* v. *Sanderson,* 18 How. 42; *Sibbald* v. *United States,* 12 Pet. 488, 491, 492; *Schell* v. *Dodge,* 107 U. S. 629, 630; *Phillips* v. *Negley,* 117 U. S. 665, 674. In answer, it is said that this limitation upon the power of the court does not include mere misprisions of the clerk or clerical errors. *Bank of Kentucky* v. *Wistar,* 3 Pet. 431; *Bank of United States* v. *Moss,* 6 How. 31, 38. In the former case, the failure to include as damages in a judgment 6 per cent. interest when required by a rule of the Court was held to be a clerical error that could be corrected after the term. So it is said that the inclusion of the costs in this case was a mere misprision of the clerk, because merely added by the clerk without any special order of the Court. This is inferred because no reference to costs appears in the published opinion. It is not the proper inference. The provision as to costs appears in the judgment, the form of which was, in accordance with our practice, approved by the Justice who wrote the opinion.

He acted under authority of § 3, Rule 29, providing: " In cases of reversal of any judgment or decree by this court, costs shall be allowed to the plaintiff in error, appellant or petitioner, unless otherwise ordered by the court."

A clause in a final judgment · affecting costs has been held to be substantial and not within the court's power to change after the term. *Jourolman* v. *East Tennessee Land Co.*, 85 Fed. 251; *Staude Manufacturing Co.* v. *Labombarde*, 247 Fed. 879. The distinction between cases, in which provisions as to interest or costs may be changed after the term and those in which they can not be, lies in the nature and source of the alleged error. If it is made by the clerk in following or not following a rule of court, or for some other reason, the error may be remedied, but if the action complained of was approved by the court, it is beyond recall. Here the judgment as to costs was the action of the Court. See *St. Louis and San Francisco R. R. Co.* v. *Spiller, post*, p. 156.

But we are not content to dispose of the motion on this ground alone, even though it be adequate, for the main question is one of much importance in the every day practice before us and ought to be decided now. The argument for the state is that this is a criminal case; that costs in criminal proceedings are only a creature of statute, and that this court has no power to award them against a state unless legislation of the state has conferred it. This is the rule as to the state court in Minnesota. *State* v. *Buckman*, 95 Minn. 272, 278. At common law the public pays no costs, in England the King does not, and the state here, it is said, stands in the place of the King. So it is insisted that, when the state is brought into this Court as a defendant in error in a criminal proceeding, and the judgment of the Court goes against it, costs can not be awarded against the state because it is a sovereign.

That the sovereign is not to be taxed with costs in either civil or criminal cases by rule of court without a statute

is undoubtedly true. Chief Justice Marshall, in the case of *United States* v. *Barker,* 2 Wheat. 395, said: " The United States never pay costs." In *Reeside* v. *Walker,* 11 How. 272, at p. 290, this Court said: " The sovereignty of the government not only protects it against suits directly, but against judgments even for cost, when it fails in prosecutions." *The Antelope,* 12 Wheat. 546, 550; *United States* v. *McLemore,* 4 How. 286, 288; *United States* v. *Boyd,* 5 How. 29, 51. See also *Nabb* v. *United States,* 1 Ct. Cl. 173; *Henry* v. *United States,* 15 Ct. Cl. 162. But is the state to be regarded as the sovereign here? This Court is not a court created by the State of Minnesota. The case is brought by a writ of error issued under the authority of the United States by virtue of the Constitution of the United States. It is not here by the state's consent but by virtue of a law, to which it is subject. Though a sovereign, in many respects, the state when a party to litigation in this Court loses some of its character as such.

For many years, costs have been awarded by this Court against states. Under the judicial article of the Constitution, the original jurisdiction of this Court includes suits to which a state is a party. There have been many boundary and other cases brought here by one state against another in which costs have been awarded against one of them and often against both. Usually they have been divided, but if the case proves to be a " litigious case," so-called, all the costs have been assessed against the defeated party. *State of North Dakota* v. *State of Minnesota,* 263 U. S. 583. *State of Missouri* v. *State of Iowa,* 7 How. 660, 681, shows that this has been the practice since 1849. A rule of this Court as to the awarding and division of costs is, of course, not a statute, but such a rule seems to us to be within the inherent authority of the Court in the orderly administration of justice as between all parties litigant, properly within its jurisdic-

tion, except the sovereign government. This view is supported by the history of Rule No. 37 of this Court in the January Term of 1831, 5 Pet. 724. That shows that, against the dissent of Mr. Justice Baldwin, this Court adopted a rule imposing costs against a defendant for a transcript of record in cases of reversal. The dissent was based on the ground that no costs could be imposed by this Court by rule without specific authority of a statute.

It is insisted that, while in civil cases costs may be awarded against a state as a litigant before this Court, the rule does not apply in criminal cases. As the objection to taxing costs against a state has been because of its sovereign character, and that, as we have said, has no application to a state as a litigant in this Court, there would seem to be no more reason for immunity in a criminal case than in a civil one. But it is pointed out that this distinction has been made by this Court in the case of *United States ex rel. Phillips* v. *Gaines,* 131 U. S., Appendix, clxix. That was a writ of error from this Court on a certificate of division between the Judges of the United States Circuit Court for the Middle District of Tennessee. It was a mandamus case brought to command the comptroller of the state to issue his warrant to the state treasurer for the payment of a bill of costs of an indictment against Phillips, one of the relators. In 1870, Phillips had been indicted in the county of Putnam for the murder of one Ford. Phillips presented his petition to the state court, praying for the removal of the indictment into the Circuit Court of the United States by virtue of three Acts of Congress, the first, of March 3, 1863, c. 81, 12 Stat. 755, 756, § 5, the second, of May 11, 1866, c. 80, 14 Stat. 46, § 3, and the last, of February 5, 1867, c. 27, 14 Stat. 385. Their purpose was to enable any officer of the United States, military or civil, charged with a crime, against the state, for acts done under color of federal

authority, to remove the prosecution into the Circuit Court of the United States for trial by the state prosecuting officers in that court. In 1874, the State of Tennessee, by her attorney, appeared and dismissed the case, agreeing that the costs should be adjudged against the state. The Circuit Court accordingly rendered the judgment for costs. A warrant for the payment of the costs was demanded from the state comptroller and refused. Mr. Justice Strong, in deciding the case, said:

" Costs in criminal proceedings are a creature of statute, and a court has no power to award them unless some statute has conferred it."

He pointed out that this was the rule in the State of Tennessee, *Mooneys* v. *State,* 2 Yerger, (Tenn.) 578, but referred to an Act of 1813 of that State in which it was provided that in all criminal cases above the grade of petit larceny, where the defendant was acquitted, costs should be paid out of the treasury of the State. There were certain statutory prerequisites before they could be paid by the comptroller. The judgment of this Court turned on the fact that such prerequisites had not been complied with. The language of the court indicated that costs could only be awarded in accordance with the statute of the State of Tennessee. We do not think that the case on its facts is an authority here. There was a peculiar and exceptional situation. The case was a prosecution by the State of Tennessee, and its trial by the state was bodily transferred to the environment of the Circuit Court of the United States. All incidents of a trial of the case in the state court were regarded as following the case in the federal court. The question of costs was, therefore, thought to be governed by the same rule as it would have been in the state court.

Without reconsidering the correctness of that ruling, we think the case here to be different. The costs here incurred are in a litigation brought by writ of error into

this Court to test the validity under the Federal Constitution of a statute of the state. The incidents of the hearing are those which attach to the regular jurisdiction of this Court. We have had our Clerk make an examination of our records reaching back to 1860. There were one hundred twenty-nine cases examined, which do not include the boundary cases between states on the Original docket already referred to. It thus appears that since that date the invariable practice has been when the judgment has been against a state in both civil and criminal cases to adjudge costs against it, under the Rule which is now § 3, Rule 29, of our present Rules. That rule in different forms, and under a different number, has been in force since the February term, 1810. Dewhurst, Rules of Practice in the U. S. Courts (2d ed.) 153. It has been in its present form since the January Term, 1858. See *St. Louis and San Francisco R. R. Co.* v. *Spiller, post,* p. 156. We think that the rule, construed by long practice, justifies us in treating the state just as any other litigant and in imposing costs upon it as such, without regard to the inferences sought to be drawn from *United States ex rel. Phillips* v. *Gaines, supra.*

If specific statutory authority is needed, it is found in § 254 of the Judicial Code, which first appeared in the Act of March 3, 1877, c. 105, 19 Stat. 344, and was reenacted March 3, 1911, c. 231, 36 Stat. 1087, 1160. It provides that there shall be " taxed against the losing party in each and every cause pending in the Supreme Court " the cost of printing the record, except when the judgment is against the United States. This exception of the United States in the section with its emphatic inclusion of every other litigant shows that a state as litigant must pay the costs of printing, if it loses, in every case civil or criminal. These costs constitute a large part of all the costs. The section certainly constitutes *pro tanto* statutory authority to impose costs genera y against a state if defeated.

*The motion is denied.*