William HEIGLER

v.

Police Officer William GATTER et al.

Civ. A. No. 76–2961.

United States District Court, E. D. Pennsylvania.

Aug. 29, 1978.

S. Allen Needleman, Philadelphia, Pa., for plaintiff.

Thaddeus J. Bartkowski, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff brought this action under 42 U.S.C. § 1983 claiming that the defendants, two Philadelphia police officers, had violated his Fourth and Fourteenth Amendment rights under the United States Constitution. The plaintiff also alleged the following pendent state law claims: 1. false arrest and imprisonment; 2. assault; 3. battery; and 4. malicious prosecution. At trial, which commenced on July 6, 1977 and terminated on July 15, 1977, the plaintiff prevailed on all claims asserted against each defendant except for his malicious prosecution theory. The jury returned a verdict against defendant Gatter for $1,166.00 actual damages and $6,400.00 punitive damages and against defendant Connerton for $4,000.00 punitive damages. Plaintiff's counsel has now filed a petition pursuant to 42 U.S.C. § 1988 seeking attorney's fees.

Plaintiff's petition claims reimbursement for 98.25 non-trial hours at $60.00 per hour (total of $5,895.00) and 34.50 trial hours at $100.00 per hour (total of $3,450.00) for a total of $9,345.00. Plaintiff's counsel contends that all these hours were reasonably expended on this litigation and that the suggested hourly rates are comparable to those charged by attorneys with trial experience similar to that of plaintiff's counsel. Plaintiff's attorney also asserts that the novelty of the factual issues in this case and the results obtained warrant the full award sought in the petition. One flaw which plaintiff's counsel acknowledges in his petition is his failure to keep contemporaneous time records.

Defendants oppose the petition since in their view the fees sought bear no reasonable relationship to the benefits conferred upon the plaintiff by the verdicts. In short, they state that a $9,000.00 fee cannot be justified in light of a $11,566.00 verdict. Defendants have also listed a number of specific items to which they object. It must be noted, however, that despite the fact that this petition for attorney's fees has been pending almost three months, defendants have failed to file a memorandum or any other document explaining their objections.

In addressing the contentions of the parties, we are guided by the Third Circuit's recent discussions of attorney's fees in *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978) and *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978).

· These cases reiterate the *Lindy* mandate that the first step in ascertaining a reasonable fee is a determination of the hours reasonably spent in the pursuit of plaintiff's successful claims. *See, e. g., Baughman, supra* at 1214. As noted above, defendants' counsel object to certain hours listed by plaintiff's attorney, but they fail to provide any record support for these objections. However, our independent review of the transcript, docket sheet, and documents filed in this case convince us that the hours

estimated by plaintiff are excessive. Indeed, this highlights the problem created by counsel's failure to keep accurate and precise time records. Any reconstruction of a time sheet, as was attempted by counsel for plaintiff, can only lead to the difficulties we have encountered in this case in deciding whether counsel for plaintiff has carried his burden of proof on the issue of attorney's fees.

For example, counsel for plaintiff claims that he expended 34.50 trial hours. Our careful review of the trial transcript, however, reveals a total trial time of 31 hours, and that is the figure we have used in computing the award of counsel fees.

We also are unwilling to accept plaintiff's estimate of 98.25 non-trial hours. First, we have two specific objections to the reasonableness of the hours submitted by counsel. Counsel seeks remuneration for 4 hours listed for December 12 and 16, 1977 as time spent reviewing transcripts. We cannot accept this activity as reasonably related to the pursuit of this case since plaintiff did not file a post trial memorandum addressing the merits of defendants' post trial motions since the latter were never supported by a memorandum of law. Counsel also seeks compensation for 15 hours spent on preparing points for charge, but this figure seems high because no unique legal problems were presented and plaintiff's points although lengthy consisted largely of standard charge material. Therefore, we will cut this figure to 5 hours.

 This reduces plaintiff's non-trial hours to 84.25. However, we feel that this figure should be reduced by approximately 20% to 68 hours because of counsel's failure to keep contemporaneous time records. Even though "a substantially reconstructed" record time spent on litigation may serve as a basis for a statutory fee award, *see Meisel v. Kremens*, 80 F.R.D. 419, at 424 (E.D.Pa. 1978), the court should scrutinize reconstructed time records with extra care to assure that there is no noticeable, albeit advertent, inflation of hours. While we are aware of the Court of Appeals' admonition that generally a district court should not

simply make a percentage "across the board" adjustment to a fee petition to account for an overlap, *see Prandini, supra* at 51–52, *citing Hughes, supra* at 487, we feel that the only cure for a failure to keep contemporaneous records is a percentage reduction. The results of this failure cannot be pinpointed with the same accuracy as the computation of overlap required to file two motions in similar cases or the time spent in pursuit of non-meritorious claims. The overlap and pursuit of non-meritorious claims tend to appear in readily identifiable segments of time, *e. g.*, time spent on a brief in support of the non-meritorious claim. On the other hand, a failure to keep precise time records can only manifest itself in a general inflation of the fee sought.

Even if a 20% reduction were not permitted, we would be compelled to find that plaintiff's attorney has not carried his burden of showing the reasonableness of more than 68 non-trial hours in this case. This was not a complicated case. Plaintiff's counsel was only required to file four motions during the case, three of which (motion to strike answer, motion to amend complaint and motion for a protective order) were not elaborate. Also, trial preparation required only that plaintiff take four brief depositions ranging in length from .5 hours to 2.5 hours. The limited nature of the case is further illustrated by the fact that counsel felt it necessary to file only one set of interrogatories consisting of 10 form interrogatories. None of these interrogatories refer specifically to the facts of this case or any of the named parties. Further, while the trial did stretch over a number of days, this was primarily a function of scheduling difficulties rather than the complexity of the case.

We conclude that the hours submitted by plaintiff are excessive and unreasonable in light of the limited scope of this case. This results in plaintiff's failure to carry his burden of proving the reasonableness of more than 68 hours spent on trial preparation.

Finally, it should be noted that since all of plaintiff's claims were interrelated, we see no reason, nor has defendant specified a reason, why the plaintiff's pursuit of state law claims or defendants' verdict on the malicious prosecution claim should result in any further adjustment to the trial or non-trial hours computed above. *See Baughman, supra* at 1214–1216; *Hughes, supra* at 487.

The second step in computing the lodestar is to determine a reasonable hourly rate for counsel. The cases have established that, in addition to such factors as quality, experience and position, the district court should also consider the nature of the activity performed and all the remaining circumstances present in the case. *See Baughman, supra* at 1219. In weighing these factors, we conclude that plaintiff's counsel is entitled to $50.00 per hour for non-trial time and $75.00 per hour for trial time.

In arriving at these figures, we have specifically considered several factors. First, the $50.00 per hour figure is based upon the routine nature of the trial preparation required in this case. As noted above, the case did not present any novel factual or legal issues. The case was decided upon the basis of evaluating plaintiff's credibility versus that of the defendants. The documents in this case, including interrogatories and motions, required little original drafting by counsel. Second, plaintiff's counsel has not provided the court with any evidence of particular experience in the civil rights area. Finally, plaintiff's counsel is primarily a trial lawyer. The quality and experience factors stressed in the hourly rate are reflected in counsel's work in the courtroom. This skill is particularly valuable in a case of this type which turns on credibility. Also, it is not unusual for an experienced trial lawyer to be paid a premium for time spent in court. Therefore, counsel merits a $25.00 per hour increase on his hourly rate for time spent in court.

■ On the basis of the figures stated above, we are able to arrive at a lodestar amount of $5,725.00. The next step in computing a reasonable fee is assessing whether the contingency and quality factors warrant

an increase in the lodestar figure noted above. Neither of these factors merits an adjustment to the lodestar on the facts of this case.

First, "any addition to or subtraction from the lodestar to account for the quality of an attorney's work 'is designed to take account for an unusual degree of skill, be it unusually poor or unusually good.'" *Baughman, supra* at 1218, *quoting Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973). (*Lindy I*). Plaintiff's counsel conducted the case in a competent manner worthy of someone with his skill and experience. These factors were adequately compensated in considering a reasonable hourly rate and there was not unusual performance justifying an increase in this case. *See Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). (*Lindy II*).

Second, the contingency factor does not justify an increase for several reasons. This case was neither factually nor legally complex. *Lindy II, supra* at 117. This lack of complexity manifested itself in a risk of a relatively small number of hours being expended without compensation. *Id.* Finally, where "the lodestar as originally calculated by the district court [is] a significant amount in comparison to the amount awarded plaintiff in damages," the court should be reluctant to increase the lodestar through the contingency factor. *Baughman, supra* at 1218. In this case, the lodestar constitutes a substantial percentage of the recovery received by plaintiff. Therefore, we conclude that no further adjustment to the lodestar is warranted.[1]

Plaintiff has also requested unreimbursed costs of $523.40. Defendant has not opposed the grant of these costs and, therefore, they will be awarded to plaintiff's counsel.

---

1. While the recent cases commendably clarify the factors the district court must consider in awarding attorney's fees, they have created some doubt in our mind as to exactly when and how these factors are to be analyzed. Specifically, it is unclear to us to what extent a district court is permitted to make a final review of the overall reasonableness of the fee once the *Lindy* fee has been computed.

In *Hughes*, three separate judges seemed to endorse a three-step analysis as follows: 1. computation of the lodestar; 2. adjustment of the lodestar by the quality and contingency factors; and 3. a final modification of the adjusted lodestar to arrive at a reasonable fee providing that the district court articulates rational reasons for this final modification. *See Hughes, supra* at 487; *id.* at 489–491 (Rosenn, J., concurring); *id.* at 491–492 (Garth, J., concurring). Indeed, all of the judges identified at least some of the factors that they thought should be considered in the final modification to assure a reasonable fee. *See id.* at 487; *id.* at 490 (Rosenn, J., concurring); *id.* at 491–492 (Garth, J., concurring).

However, the following language in *Baughman*, could be read to signal a retreat from the three-step analysis:

We believe that the analysis set out in our decisions in *Lindy I, Lindy II*, and *Merola II* [*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir.)] provides a method for the determination of what fee is reasonable under the circumstances and within the meaning of the Clayton Act. Under the *Lindy* line of cases, the district court must examine the hours devoted to the successful claim to insure that they were reasonably incurred, and must set the hourly rate at a reasonable figure as well. *Moreover, the court can adjust the lodestar to account for the contingent nature of the case and the quality of the work performed, whether exceptionally poor or exceptionally good: in making these adjustments to the lodestar, the court, if it follows faithfully our analysis, can make adequate adjustments to the lodestar to insure that the fee is no more than is reasonably warranted by the circumstances and by the purposes of the antitrust laws.* We do note, however, that the court's determination to adjust the lodestar should be supported by a statement of reasons supporting its decision. (emphasis added)

*Baughman, supra* at 1219. This language suggests that adjustments to reflect reasonableness should be made only when considering the quality and contingency multipliers. At any rate, we need not resolve this difference of opinion here since, under either analysis, we feel that the attorney's fees computed in the body of this Memorandum are reasonable in light of the statute and all the circumstances in the case.